Filed 2/16/22  P. v. Smith CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>ISHMAEL MAURICE SMITH,<br><br>      Defendant and Appellant. | C092930<br><br>(Super. Ct. No. 19CF02786) |

Defendant Ishmael Maurice Smith was tried by jury and convicted of forcible rape and battery.  In a bifurcated proceeding, the jury also found defendant was previously convicted of robbery.  The trial court determined this prior conviction qualified as a strike offense within the meaning of the Three Strikes law.  (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.)[1]  Following an unsuccessful motion to strike this prior conviction pursuant to

---

[1]     Undesignated statutory references are to the Penal Code.

*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, the trial court sentenced him to serve 21 years in state prison (upper term of eight years for the rape, doubled pursuant to the Three Strikes law, plus a consecutive five years pursuant to § 667, subd. (a)).[2]

On appeal, defendant contends: (1) section 654 required the trial court to stay the sentence imposed for defendant's battery conviction because that crime was incidental to the crime of rape and was committed with the same intent and objective; (2) we must remand the matter for resentencing because Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393), effective at the time defendant was sentenced, provides the trial court with discretion to strike his five-year serious felony enhancement in the interest of justice; and (3) imposition of various fines, fees, and assessments without first determining defendant's ability to pay violated the due process and excessive fines clauses of both the state and federal Constitutions.

We affirm. The trial court did not err in imposing a concurrent sentence for defendant's battery conviction. Defendant's second and third contentions are forfeited for failure to raise these issues below. Anticipating this conclusion, defendant contends his trial counsel provided constitutionally deficient assistance. We reject this alternative contention. However, as the Attorney General points out, and defendant concedes, we must order correction of the abstract of judgment to reflect defendant's total sentence.

FACTS

During the early morning hours of March 9, 2019, D. was at a bar in Chico with some acquaintances. When the bartender announced last call, she decided to walk home alone. D. was intoxicated, but "still coherent." She came across defendant at some point

_____

[2] A concurrent sentence of six months was imposed for the battery.

2

during the walk. They struck up a conversation as they walked. When they got to an east-west alley off of Salem Street, defendant pushed D. into the alley and raped her.

There was no real dispute at trial as to defendant's identity. DNA collected during D.'s sexual assault examination came back as a match to defendant's DNA in an online database. Further DNA samples were then taken from defendant to confirm. Those samples also matched the sample collected during the sexual assault examination.

Defendant's main defense at trial was consent. However, because defendant does not challenge the sufficiency of the evidence establishing he forcibly raped D., we decline to recount all of the evidence adduced to establish D. did not consent to defendant's actions in the alley. It will suffice to note that her testimony and prior statements to police, the sexual assault examiner, and her sister, whom she called immediately after the rape, as well as her demeanor throughout, proved her lack of consent beyond a reasonable doubt.

We must, however, provide a fairly detailed account of the timing of defendant's assaultive conduct in the alley because this is relevant to defendant's first contention in this appeal. D. testified that she fell to her knees when defendant pushed her into the alley and ended up on her back as defendant removed her boots, pants, and underwear. After smelling D.'s underwear, defendant placed his tongue on her vagina and then inserted his penis into her vagina while he was on top of her. The rape ended after defendant ejaculated inside of her. D. then put her pants and boots back on and quickly walked home. She could not find her underwear. Because defendant continued walking with D. the rest of the way, asking her "what was wrong" and saying that she "liked it," D. did not go into her house when she got there. Instead, she walked to her car and drove to a parking lot, where she called her sister and told her what had happened.

These facts supported charges of forcible rape and forcible oral copulation. The jury convicted defendant of forcible rape and acquitted him of forcible oral copulation, instead convicting defendant of misdemeanor battery as a lesser included offense.

3

DISCUSSION

# I

## *Section 654*

Defendant contends section 654 required the trial court to stay the sentence imposed for his battery conviction because that crime was incidental to the crime of rape and was committed with the same intent and objective. We disagree.

"An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) "The purpose of this statute is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime. Although these distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, the trial court may impose sentence for only one of the separate offenses arising from the single act or omission—the offense carrying the highest punishment." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312; *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1345.)

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective." (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) Where "different crimes were completed by a 'single physical act . . .' . . . the defendant may not be punished more than once for that act." (*Ibid.*)

Where, as here, there is more than one physical act, the following rule applies: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of*

4

*California* (1960) 55 Cal.2d 11, 19, disapproved on another point in *People v. Correa* (2012) 54 Cal.4th 331, 338; *People v. Rodriguez* (2009) 47 Cal.4th 501, 507.)  For example, where a defendant kidnaps a victim for purposes of rape and then follows through on that objective and commits the intended rape, he may not be separately punished for both kidnapping and rape because the sole objective of the kidnapping was to facilitate the rape.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1216 (*Latimer*).)

However, if the "defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]"  (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).)  In the context of sex offenses, separate punishment is not precluded by section 654 even where a defendant commits multiple sex offenses against a single victim during a continuous attack with a single objective, i.e., achieving sexual gratification, so long as "[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental" to any other.  (*People v. Perez* (1979) 23 Cal.3d 545, 553-554 (*Perez*).)  This is because a "defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act."  (*Id*. at p. 553; *Harrison*, at pp. 335-338 [§ 654 did not preclude multiple punishment where defendant committed three acts of forcible sexual penetration against a single victim during a continuous 7- to 10-minute attack].)

" 'Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination.  [Citations.]  Its findings will not be reversed on appeal if there is any substantial evidence to support them.  [Citations.]  We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably

5

deduce from the evidence.'  [Citation.]"  (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378.)

Defendant argues this case is like *Latimer*, *supra*, 5 Cal.4th 1203, because "while not involving a kidnapping, nonetheless, the acts were done in combination as part of a continuous sexual encounter to prepare [D.] for intercourse" and "[t]here is no evidence in the record that in committing misdemeanor battery, [defendant had] any other criminal ambitions besides completing the objective [of] rape."  In response, the Attorney General argues *Perez*, *supra*, 23 Cal.3d 545, and *Harrison*, *supra*, 48 Cal.3d 321, are the more analogous authority, pointing out that defendant was convicted of battery as a lesser included offense of forcible oral copulation.  The Attorney General argues "the act of oral copulation that resulted in the battery conviction was not a means of committing the rape, did not facilitate commission of the rape, and was not incidental to the rape."

The Attorney General has the better argument.  This is not a case where defendant was charged with misdemeanor battery based on shoving D. into the alley in order to rape her there.  In such a case, the battery would undoubtedly have been committed in order to facilitate the rape and *Latimer* would preclude separate punishment.  But here, defendant was charged with forcible oral copulation and forcible rape based on his sexual conduct in the alley once D. was already on the ground.  For whatever reason, the jury did not convict him of the oral copulation and instead convicted him of simple battery.  However, substantial evidence nonetheless supports the trial court's implied finding that this battery offense was sexual in nature and was committed not as a means of committing rape, but for a separate lascivious purpose independent of, rather than incidental to, the rape that followed.

The trial court did not err in imposing a concurrent sentence for defendant's battery conviction.

6

## II

### *Senate Bill 1393*

Defendant also claims we must remand the matter for resentencing because Senate Bill 1393 provides the trial court with discretion to strike his five-year serious felony enhancement in the interest of justice. However, this provision was in effect at the time defendant was sentenced and his trial counsel did not ask the trial court to exercise its discretion to strike the enhancement.[3] The claim is therefore forfeited. (See *People v. Carmony* (2004) 33 Cal.4th 367, 375-376 ["any failure on the part of a defendant to invite the court to dismiss [a strike] under section 1385 following *Romero* waives or forfeits his or her right to raise the issue on appeal"]; *People v. Trujillo* (2015) 60 Cal.4th 850, 856 ["claims of error in the trial court's exercise of its sentencing discretion are . . . forfeited if not raised at the sentencing hearing"].)

Anticipating this conclusion, defendant argues his trial counsel provided constitutionally deficient assistance. We reject this alternative contention.

"In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.] A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel.

---

[3] Senate Bill 1393 went into effect January 1, 2019. (Stats. 2018, ch. 1013; *People v. Garcia* (2018) 28 Cal.App.5th 961, 971.) Defendant was sentenced nearly two years later, in October 2020.

[Citations.] If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.] Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus. [Citation.]" (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.)

Here, defendant's trial counsel made a *Romero* motion asking the trial court to dismiss defendant's prior strike in the interest of justice. That motion was denied. There is no assertion in this appeal that the trial court abused its discretion in declining to dismiss this strike under *Romero*. Indeed, as the trial court stated during the sentencing hearing, the current offense involved "great violence" against a "particularly vulnerable" victim, indicating defendant presents "a serious danger to society"; his "prior convictions as an adult and sustained petitions as a juvenile have increased in seriousness," including the prior strike conviction; and he was on probation at the time of the current offense. Defendant in no way fell outside the spirit of the Three Strikes law. (See *People v. Williams* (1998) 17 Cal.4th 148, 161.) After the trial court's comments about defendant being a serious danger to society, defense counsel might reasonably have concluded asking the court to dismiss the serious felony enhancement would have been a futile gesture.

Moreover, as the Attorney General points out, there is no indication in this record that the trial court was unaware of its discretion to dismiss the enhancement. Senate Bill 1393 had been in effect for nearly two years at the time of sentencing. "A court is 'presumed to have been aware of and followed the applicable law' when imposing a sentence. [Citation.]" (*People v. Reyes* (2016) 246 Cal.App.4th 62, 82; *People v. Mosley* (1997) 53 Cal.App.4th 489, 499 [remand for an exercise of discretion under *Romero* was unnecessary where there was "a complete absence of any evidence the trial judge was unaware of the scope of his discretion"].) Even though the analyses for striking a prior

8

strike and dismissing a serious felony enhancement are different, defendant cannot show prejudice. The trial court's comments about defendant being a serious danger to society combined with its awareness of its discretion to dismiss a serious felony enhancement demonstrate that defendant suffered no prejudice by defense counsel's omission.

We conclude defendant has not carried his burden of establishing either deficient performance or prejudice.

## III

## Dueñas *Claim*

Relying primarily on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, defendant asserts that the trial court's imposition of various fines, fees, and assessments without first determining his ability to pay violated the due process and excessive fines clauses of the state and federal Constitutions. This claim is also forfeited for failure to ask the trial court to determine his ability to pay before imposing the challenged fines, fees, and assessments.

"[I]t is of course a familiar rule that appellate courts will not review errors to which an objection could have been, but was not, made in the trial court." (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1309.) This rule applies to appellate challenges to the imposition of fines and fees, including those based on the trial court's failure to determine the defendant's ability to pay. (See, e.g., *People v. McCullough* (2013) 56 Cal.4th 589, 597 [defendant's failure to object to booking fee based on ability to pay forfeits claim that the record did not establish such ability]; *People v. Avila* (2009) 46 Cal.4th 680, 729 [defendant's failure to adduce evidence of inability to pay maximum restitution fine forfeits challenge to trial court's implied finding he possessed ability to pay that amount]; *People v. Crittle* (2007) 154 Cal.App.4th 368, 371 [defendant's failure to object to a crime prevention program fine forfeits the claim that the trial court failed to consider his ability to pay the fine, and that the record did not support such an ability];

9

*People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1076 [challenge to probation services fee forfeited].)

We nevertheless address defendant's *Dueñas* and related excessive fines claims on their merits in order to expediently dispose of his alternative assertion of ineffective assistance of counsel.

First, we are in agreement with the line of cases that conclude *Dueñas* was wrongly decided and reject defendant's due process challenge on that basis.[4] (See, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, review granted Nov. 26, 2019, S258946; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279-281; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1068-1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 927-928.) Stated simply, the strands of precedent relied upon by the *Dueñas* court in expanding due process protections to require an ability to pay determination before imposing a mandatory fine, fee, or assessment do not support, and indeed run contrary to, such an expansion. Imposition of the challenged financial obligations has not deprived defendant of access to the courts. Nor has defendant been incarcerated because of his inability to pay. Rather, he was incarcerated because of his crimes.

Second, defendant has also failed to persuade this court that imposition of the restitution fine and sex offense conviction fine in this case violated his Eighth Amendment right against excessive fines, as that right was recently described by the

---

**4** Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp,* at pp. 95-96.)

United States Supreme Court in *Timbs v. Indiana* (2019) ___ U.S. ___ [203 L.Ed.2d 11]. That case is so manifestly inapposite we decline to discuss it at all. Instead, we simply note defendant has cited us to no authority, nor have we discovered any on our own, supporting the position that the fines imposed in this case are excessive in relation to the gravity of defendant's offenses or his economic situation. (*Id*. at p. ___ [203 L.Ed.2d at p. 17].).)

Given our consideration and rejection of these constitutional challenges on the merits, defendant's alternative assertion of ineffective assistance of counsel must fail for lack of prejudice.

## IV

### *Correction of the Abstract of Judgment*

Finally, as the Attorney General points out, and defendant concedes, the abstract of judgment does not set forth defendant's total sentence. The line for "total time imposed" is blank. We shall order correction of the abstract of judgment to state the total time imposed is 21 years.[5] (See *People v. Jones* (2012) 54 Cal.4th 1, 89.)

### DISPOSITION

The judgment is affirmed. The trial court is directed to (1) correct the abstract of judgment to reflect defendant's total sentence of 21 years in state prison and correct the

---

[5] We do note the abstract of judgment lists defendant's middle name as "Marice" instead of "Maurice." From our review of the record, this appears to be a typographical error. We will order amendment of the abstract of judgment to correct the error.

spelling of his middle name to "Maurice" and (2) forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

　　　　　　　　　　　　　　　　　/s/

　　　　　　　　　　　　　　　　　HOCH, J.

We concur:

　/s/

BLEASE, Acting P. J.

　/s/

DUARTE, J.

12